Brinkmann et al.  Town of Southhold. All right. Good morning, Ms. Herbert, you reserve three minutes for rebuttal. You can begin whenever you're ready. Chrissy Hebert, the Institute for Justice for Appellants. May it please the court. The court should reverse the section 1988 fee award to defendants and rule that fees are inappropriate as a matter of law. Plaintiff's claim, which divided a panel of judges from this court to one, produce a published decision with a 28 page dissent and drew three votes from Supreme Court justices for review, cannot be frivolous. As this court knows, a prevailing defendant may only recover fees under section 1988 if plaintiff's claim was frivolous. Here, plaintiff's claim was not frivolous. When whether plaintiff's had a claim was an issue of first impression requiring judicial resolution. And Judge Kearse, as you recognize with Judge Jacobs in the majority opinion in the prior appeal, the question of whether plaintiff's claim existed under the takings clause had never been a dispositive issue before this court or the Supreme Court. No binding authority preemptively closed the door to plaintiff's claim. The district court below concluded the opposite. That's clear legal error and enough to decide this appeal. But even if the district court had been right, plaintiff's claim had a legal basis. We relied on persuasive authority from both federal and state courts. Judge Hall was wrong to find plaintiff's claim frivolous and wrong to award fees. What about the argument that Goldstein controlled in this case? Is that a legitimate argument or not? No, Your Honor, that is not a legitimate argument. Page 63 of Goldstein highlights that there would potentially be some set of facts someday that would require this court to provide objective scrutiny of the justification for the takings. And the way this case was treated on appeal confirms that plaintiff's claim was not frivolous. The prior panel agreed that the only question was the legal question about whether the plaintiffs had a claim under the takings clause and that specific question divided this court to one. A legal question that divides this court is by definition not frivolous. Then three Supreme Court justices voted to grant review of that legal question. Supreme Court justices don't vote to grant review of frivolous legal questions. And before the Supreme Court, counsel for defendant recognized that the Connecticut Supreme Court had endorsed a claim like plaintiff's in the case of New England Estates. That means that defendant before the Supreme Court recognized that plaintiffs had a legal basis for their claim. Now, this case is an important opportunity for this court to make the warning from Christiansburg about the danger of confusing loss with frivolousness, concrete, and endorse the best practice that you have seen throughout this court's cases of waiting on fees decisions until appeals are finished. We ask this court to reverse the fee award and confirm that fees were inappropriate as a matter of law in a published opinion. With no further questions, I'll sit down. Good morning, Your Honors. May it please the court. I'd like to emphasize that. You're Mr. Creppen? Yes. Scott Creppen for the town of South Hold. May it please the court, counsel. First, this is a question of statutory fee shifting. The lower court has discretion to shift fees to the prevailing party. The Supreme Court and this court and all the courts around the country have interpreted that discretion as applying when a claim is not just frivolous, but frivolous. Frivolous, unreasonable, or without foundation. We're not talking about the Rule 11 standard. A finding that the arguments were unreasonable would be sufficient. And looking particularly at the special appendix, pages 4, 16, and 17, the lower court made specific findings that support this fee award. This is not a case where they raise an issue of, they call it an issue of first impression, it's kind of an issue of first impression, but it's extending and seeking to overturn established precedent.  Well, Goldstein, neither the majority opinion nor the dissent viewed Goldstein as controlling to the extent that there was no discussion of it being distinguishable. Both the majority, it was a lengthy majority opinion and a dissent where the majority opinion said Goldstein confirms our conclusion. It didn't say Goldstein forecloses any argument here, right? Correct. And they don't. Goldstein was different than Goldstein because both, again, the majority opinion and the dissent, but the majority opinion said that there was enough play to show pretext, that it was not the type of pretext that could ultimately prevail, but different from Goldstein, where Goldstein, we said there was no, there was not sufficient evidence of any pretext, whereas here, the majority said there was sufficient evidence of a pretext, right? The very first sentence of the opinion said that. The second sentence, the complaint alleges facts sufficient to support a finding that the decision to create the park was a pretext. So, so Goldstein, I don't want to go into all the details of the decision. My only point is that Goldstein clearly didn't foreclose this to the extent that it would be unreasonable for them to argue otherwise, right? I think it would be unreasonable. Under these facts, the theory that there can be a protectual. What about their argument that if a judge dissents and agrees with them, and three justices of the Supreme Court think that search should be granted, that how could you argue that this is unreasonable to the extent that it should be sanctioned? What's your response to that? My response is that it's not a sanction. It's statutory fee shifting, and it's an exercise of the lowest court's discretion. But it has to be unreasonable. And it can be unreasonable. Presumably their argument is that there's at least an inference that three justices of the Supreme Court agree with them. I don't think that inference is valid. I think three, at least three justices of the Supreme Court found it an interesting enough issue to want to take up, whether or not they agree with the argument. Your argument is that they're taking the case to show that it's so frivolous an argument? They want to take the case to show how frivolous an argument this is? Is that right? No. No. I think my argument is they want to take the case for the reasons they want to take the case that are not, that are their own reasons, whether or not they, they would not grant cert, the standards for granting cert are not that they believe a reversal is necessary. It's that it's a matter of public interest that should be evaluated. When in the history of the Second Circuit have we found fees were appropriate because the claim was unreasonable, where there's been a dissent? When have we ever done that? I'm not aware of it ever happening, but again, this is a question of first impression within a question of first impression. This is a unique situation where you have a nonprofit that is a nonprofit, not for charitable purposes, but for advocating a specific position to erode the power of eminent domain. And they went after the town. The issue here is whether the public or this entity that's trying to take away the municipal power of eminent domain should bear the hundreds of thousands of dollars in extra expense that they added to this. The Brinkmans are being compensated fairly. They've already received close to a million dollars. There is a state court proceeding pending as to whether or not they're entitled to additional compensation. They've caused, and looking at the findings, not just in bringing this claim. They didn't bring the claim saying we have an issue of first impression. They brought the claim with a preliminary injunction saying that the law was squarely on their side, and the lower court had to push them back repeatedly saying you're misrepresenting. You're, you're, you're Don't we want to encourage plaintiffs to be able to pursue their constitutional rights in courts? Don't we want them to do that? Of course. All right. Of course. Within, within certain bounds. What's wrong with them saying that we believe we should get an injunction here? That, I don't understand that argument. Let me just point you to what the R&R said were the reasons that this warranted fees, that the defendant had shown the claim was frivolous because there was no ulterior motive for acquiring the property. As I said, that even the majority opinion said there was a pretext, right? A pretext, but not an ulterior motive. I think that the, the idea that. The ulterior motive wasn't for private use, but the ulterior motive was to stop the hardware store, right? But that, the problem with that is that it applies to any, literally any contested condemnation. Anytime the government is condemning property, they're choosing a public use over a preferred private use. I understand how the majority came out, but I'm just saying that that doesn't seem to be correct. And then the R&R said the plaintiffs could have applied for a waiver to the moratorium rather than bringing the lawsuit to have their permit reviewed, but they didn't take advantage of that path. That's not a reasonable warrant for these. They're not required to seek other avenues before they decide they're going to go to constitutional rights, right? That can't be a reason to award fees that they didn't do more. They're not required, and it's not necessarily a matter of doing more. It's the approach that they took, because they, they fought over discovery. They, they ran up fees. They litigated this in an extraordinarily burdensome and expensive manner to drive up the town's fees and make it more expensive to condemn this property. And that's what happened. They sought a preliminary injunction. Is that what you're referring to? What do you, how do they drive up the fees? They sought a preliminary injunction. They moved before this Court to appeal on the denial of that preliminary injunction. Then they moved for discovery and fought. The lower court stayed discovery pending a motion to dismiss after having warned them that it was, they failed to plead a claim. They didn't move to amend their complaint. Instead, they litigated over wanting discovery and seeking burdensome discovery from the town. And that's part of the reason I think this is a, it is, the statute refers it to the lower court's discretion. And that, those are the facts that are before the lower court. None of that was mentioned in the reasoning. I'm looking at the reasoning. None of those things that you mentioned about that there was bad faith in driving up fees, seeking discovery. None of those things are in there. You're, you're. At the beginning of Judge Wick's discussion of the frivolous argument, he does reference that the town's claim is that they were bringing these proceedings solely to harass the town. And looking at the context, Judge Wick's is not.  There's no finding that they brought this proceeding to harass the town? Where is that finding? Well, he found that it was frivolous. And the proceedings before him, he was, he participated directly in those proceedings and dealt with the litigants and the parties. So even if he doesn't explicitly reference all of the discussions that he had with plaintiffs' counsel and all the proceedings and the way that they pursued this claim unreasonably, that is the context. And that is why it is entrusted to the discretion of the trial court. Why isn't this just a situation where the plaintiff is seeking to pursue a claim, recognizing that the law, as a general matter, is not in their favor, but hoping to have that changed either by us or by the Supreme Court? And they did get a dissent in our, our court, and they, three justices of the Supreme Court wanted it, wanted to have the question go unsearched. It's all part of the nature of what is it taking under the Fifth Amendment? It could be. And I think a good, it would be to fee shift under circumstances where someone is making a good faith argument from the change, a change in the law would be an exceptional situation. But this is that exceptional situation. The, because one, they didn't initially, they shifted tactic. Initially, they weren't saying it's a good faith argument for a change in the law. They were misrepresenting what the law was, knowing full well that they were scratching it. Two, the, the facts of this. They weren't allowed to try to distinguish Goldstein? They had it conceived that Goldstein. Oh, no, not just Goldstein. They, they went in, their initial motion practice before the lower court said that there's overwhelming authority in their, in support of their theory of pretext, when there was not. Every single case. The Connecticut Supreme Court supports them, right? The Connecticut Supreme Court agrees completely. The Connecticut Supreme Court in a case involving discrimination. The phrasing might support them, but the actual facts of that case involved a discriminatory motive, not just we prefer. Judge O'Massey also concluded that Georgia, Pennsylvania, Rhode Island, New Jersey, Massachusetts, Ohio, and Nevada support them as well. There's, they support a theory of bad faith pretext takings, which is a valid theory, just not applicable to these facts. And if you look particularly at Fox v. Vice, I think that, that is really the, the strongest case in our favor here. The facts of, that is not a frivolous claim. The, the idea that a outgoing sheriff blackmailed someone and had false police reports filed against his political rival, that was not a frivolous claim, but the Supreme Court awarded fees or affirmed the awarded fees under those circumstances. That, those claims on the facts and on the law had substantially more merit than what the plaintiffs brought here. And on that, we rest on our briefs. Thank you. Ms. Herbert, you have three minutes on the rebuttal. Thank you, Your Honor. I want to highlight something that my friend on the other side just said in his response. This is an issue of first impression within an issue of first impression. That concedes the issue. Whether plaintiff's claim existed when they filed suit was an issue of first impression. That was not foreclosed by this court or the Supreme Court. And as Your Honor has highlighted, there were multiple state Supreme Courts recognizing the existence of a claim like plaintiff's. In fact, no court had previously rejected a pretextual or bad faith takings claim. So the law was entirely on plaintiff's side when they initiated suit. Now, ultimately, this court concluded in a 2-1 decision, a close call, whether plaintiffs had stated a claim. A close call is not frivolous. Plaintiffs were not trying to erode eminent domain, but we're trying to defend the Constitution. Everyone on the prior panel agreed that plaintiffs had stated a pretextual claim. That's the second sentence, as this court correctly highlighted, of the majority opinion. And that's at Joint Appendix, page four. So the idea that not on these facts that plaintiffs stated a claim is just wrong. I'll also highlight the timeline for this court. Judge Wicks, the magistrate judge, made the recommendation to award fees before this court's decision came down. Made the recommendation, and the recommendation remained pending on the district court's docket. This court issued its opinion in March of 2024. Just a few days later, the mandate became available on the district court's docket in April of 2024. Six months later, the district court adopted the recommendation for fees. There's no citation to this panel's opinion. There's no reference to the holdings from this court. And in fact, the holdings from the district court contradict the panel opinion. That's clear error. And I'll highlight one more piece, that it's always an abuse of discretion to make an error of law. Reasonable judicial minds could, and did, differ about the existence of plaintiff's claim. We ask that the court reverse the award of fees, rule that fees were inappropriate as a matter of law, in a published decision that will provide clear guidance for district courts. All right, thank you. Thank you both for your decision. Have a good day.